IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ERIK PAMAQUIZA ZAMORA,

                Petitioner,

    vs.

KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; DAVID EASTERWOOD, Acting Field Office Director, ICE St. Paul; and WESS LUDLOW, Captain of the Cass County Jail;

                Respondents.

**8:26CV79**

**MEMORANDUM AND ORDER**

This matter comes before the Court on Erik Pamaquiza Zamora's Petition for Writ of Habeas Corpus. Filing No. 1. He argues his current detention by Respondents is unlawful because he has an approved I-360 application for Special Immigrant Juvenile Status. Respondents argue Pamaquiza Zamora is subject to mandatory detention because he is the subject of an administrative removal order due to his violation of the Visa Waiver Program. Because Pamaquiza Zamora's arrest, detention, and order of removal were not undertaken in accordance with the required statutes and violated his Due Process rights, he is ordered released.

## I.    BACKGROUND

Petitioner, Erik Pamaquiza Zamora, is a native and citizen of Spain, and entered the United States on July 21, 2022, pursuant to the Visa Waiver Program. Filing No. 6 at 3. The Visa Waiver Program authorizes the government to waive visa requirements for citizens of certain approved countries. *See* 8 U.S.C. § 1187. Under the terms of the

1

program, a noncitizen entering the United States agrees to leave within 90 days and agrees to waive the right "to contest, other than on the basis of an application for asylum, any action for removal of the alien" in exchange for the expedited entry process. 8 U.S.C. § 1187(b)(2). Petitioner's visa expired on October 15, 2022. Filing No. 6-2 at 1.

On October 27, 2022, a probate and family trial court for the Commonwealth of Massachusetts issued a judgment of dependency, finding Petitioner was unmarried, under the age of 21, and was dependent on the court for his protection. Filing No. 11-2 at 1. It found Petitioner's mother was verbally and emotionally abusive, hit Petitioner with a belt, pushed Petitioner, left him without adequate food, did not support his education, and often expressed regret that she had given birth to him. Filing No. 11-2 at 1; Filing No. 11-3 at 2–3.

On November 14, 2022, on the basis of the state family court dependency finding, Petitioner submitted an Application for Petition for Special Immigrant with Deferred Action, Form I-360, to USCIS, along with an Application to Register Permanent Residence or Adjust Status, Form I-485, seeking Special Immigrant Juvenile Status. Filing No. 6 at 3. "Congress established SIJ status 'to protect abused, neglected or abandoned children . . . , and it entrusted the review of SIJ petitions to USCIS.'" *Walter A. v. Berg*, No. 25-CV-4720 (SRN/LIB), 2025 WL 3707593, at *3 (D. Minn. Dec. 22, 2025) (quoting *Osorio-Martinez v. Attorney Gen. United States of Am.*, 893 F.3d 153, 163 (3d Cir. 2018)). A special immigrant juvenile is defined as one who has been declared dependent on a U.S. juvenile court due to abuse, abandonment or neglect; for whom it is not in their best interests to be returned to their country of origin; and for whom DHS consents to the grant of special immigrant juvenile status. 8 U.S.C. § 1101(a)(27)(J). However, the statute

requires that a visa must be available in order to grant a noncitizen permanent residence on the basis of special immigrant juvenile status. 8 U.S.C. § 1255(a). Because the number of approved I-360 applications regularly exceeds the annual statutory visa cap for many categories of immigrants, USCIS has historically granted special immigrant juveniles deferred action until a visa becomes available. *See A.C.R. v. Noem*, 809 F. Supp. 3d 103, 111 (E.D.N.Y. 2025), *reconsideration denied*, No. 25-CV-3962 (EK)(TAM), 2026 WL 102611 (E.D.N.Y. Jan. 14, 2026) (discussing USCIS's SIJS deferred action policy). "Deferred action" is an exercise of prosecutorial discretion that defers the removal of the noncitizen based on the noncitizen's case being made a lower priority for deportation. *See Chogllo v. Warden of McCook Det. Ctr.*, No. 8:26-CV-54, 2026 WL 393137, at *1 (D. Neb. Feb. 11, 2026) (citing *Marcos L. v. Noem*, No. 26-CV-676, 2026 WL 327953, at *2 (D. Minn. Feb. 3), *report and recommendation adopted*, 2026 WL 331418 (D. Minn. Feb. 8, 2026)). "When deferred action status is approved, that means no action will thereafter be taken to proceed against an apparently deportable alien." *Id.* (citation omitted). "An ever-growing number of district courts across the country have concluded that an unrevoked grant of deferred action prevents removal." *Id.* (citation omitted).

On June 6, 2023, USCIS granted Petitioner's Form I-360. Filing No. 6-1. Because a visa was not immediately available, it granted him deferred action and allowed him to apply for employment authorization. Filing No. 6-1. Petitioner's grant of deferred action stated it "will remain in effect for a period of four years from the date of this notice unless terminated earlier by USCIS." Filing No. 6-1 at 1.

3

Despite his grant of deferred action which remains in effect until June 6, 2027, Petitioner was arrested by ICE in St. Paul, Minnesota, on January 3, 2026, during Operation Metro Surge, ICE's recent effort to increase deportations. Filing No. 6 at 4. There is no warrant for Petitioner's arrest in the record before this Court. Instead, on the same day of his arrest, Respondents issued Petitioner a Notice of Intent to Issue Final Administrative Removal Order under the Visa Waiver Program. Filing No. 6-2 at 1. The notice alleged Petitioner had overstayed his initial visa pursuant to the Visa Waiver Program and was removable on that basis. Filing No. 6-2 at 1. On February 25, 2026, Respondents served[1] Petitioner with a Final Administrative Removal Order for violating the Visa Waiver Program. Filing No. 6-3 at 1. Neither the notice of intent nor the administrative removal order referred to or acknowledged Petitioner's approved I-360 or grant of deferred action. No notice of revocation of deferred action appears in the record before the Court.

On January 4, 2026, Petitioner was transferred to the Cass County Jail in Cass County, Nebraska. Filing No. 6 at 4. On February 23, 2026, Petitioner filed the present petition for writ of habeas corpus. Filing No. 1. He argues his current detention violates the Immigration and Nationality Act and the Fifth Amendment. *See generally* Filing No. 1. He asks the Court to issue a writ ordering his immediate release. Filing No. 1 at 6.

II.     ANALYSIS

A. Jurisdiction

---

[1] In their brief, Respondents allege they "served (or perhaps re-served) Petitioner with his removal order" on February 26, 2026 "out of an abundance of caution." Filing No. 4 at 3. It is not clear to the Court how informing Petitioner of the basis for his removal is "an abundance of caution" rather than a perquisite to removal required by both the law and Due Process. Nonetheless, there is no proof Petitioner was previously served with this removal order as Respondents seem to imply, and in any case Respondents do not contend he was served with any sort of notice prior to his warrantless arrest on January 3, 2026.

4

The Court first assures itself it has jurisdiction over this matter, as it must. *See Thigulla v. Jaddou*, 94 F.4th 770, 773 (8th Cir. 2024) (court must consider subject-matter jurisdiction sua sponte). The INA limits judicial review to removal orders involving denials of discretionary relief and expressly strips the courts of jurisdiction to hear an action involving "the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(a) & (g). But here, Petitioner does not ask us to review Respondents' exercise of discretion or its execution of a removal order, but their failure to comply with the statutes and Constitution. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("It is implausible that the mention of three discrete events [in § 1252] along the road to deportation was a shorthand way of referring to [a jurisdictional bar on] all claims arising from deportation proceedings."). The § 1252 jurisdictional bar does not apply to cases raising constitutional or purely legal questions. *Accord Freeman v. Gonzales*, 444 F.3d 1031, 1037 (9th Cir. 2006) (finding court had jurisdiction to review order of removal to Visa Waiver Program entrant who challenged denial of her application for adjustment of status); *but see Gjerjaj v. Holder*, 691 F.3d 288, 293 (2d Cir. 2012) ("[A] VWP participant may not contest removal on the basis of an adjustment of status application filed after that participant overstays the 90–day period of authorized stay."). The district court may grant a writ of habeas corpus to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Accordingly, the Court is satisfied it has jurisdiction to entertain the questions presented by this case.

**B. Petitioner Must Be Released**

Respondents argue that Petitioner waived any right to contest his removal when he signed up for the Visa Waiver Program. They argue the fact he overstayed his visa in 2022 makes him immediately removable, without recourse to administrative or judicial review because of the Visa Waiver Program's no-contest provision.

In essence, Respondents ask this Court to ignore Petitioner's approved I-360, his grant of deferred action, the abuse he suffered at the hands of his mother, the state court's finding that he was a dependent and state ward, and USCIS's approval for him to apply for work authorization and instead find him immediately removable, without appeal or legal recourse, for a visa overstay that happened three and a half years ago. Respondents argue that Petitioner's visa overstay trumps all else and that he has waived his ability to contest anything related to his removal (except asylum which the parties agree he has not filed for).

To follow Respondents' proposed course of action would be to ignore both the law and the facts of this case occurring after his visa overstay. Respondents are correct that Petitioner's initial entry was pursuant to the Visa Waiver Program and that he violated its terms by overstaying his visa. But they choose to ignore that the fact that, subsequent to this overstay, the government itself found he merited special immigrant juvenile status on the basis of the state court's dependency finding predicated on his mother's emotional and physical abuse. Because no visa was immediately available but USCIS recognized Petitioner warranted a favorable exercise of discretion, it granted him deferred action, including the ability to work, for a period of four years. USCIS did all this *after* Petitioner had overstayed his visa. That is, in 2023, rather than choose to deport Petitioner for his visa overstay, Respondents instead approved his application and granted him the ability

to stay and work in the United States until June 6, 2027, all with full knowledge of his immigration history.

Then, in January 2026, Respondents had a change of heart and decided Petitioner, now a young man with no criminal history, an approved application for a visa once one becomes available based on the United States' own statutory limitations, and approval to work and live in the United States until 2027, should be immediately deported. To effect this new-found desire, Respondents arrested Petitioner without a warrant, immediately transferred him to a different state, and then decided to rely on his 2022 visa overstay to justify these actions post-hoc.  Despite previously approving his I-360 and granting him deferred action, Respondents contended he was immediately removable notwithstanding their three-plus year delay in seeking to remove him.  Respondents never informed Petitioner his deferred action was terminated.

While Respondents would prefer to ignore the events that occurred from October 15, 2022 (the date Petitioner's initial visa expired) to Petitioner's arrest on January 3, 2026, the Court cannot and will not ignore this relevant history.  By approving Petitioner's I-360 application and granting him deferred action, Respondents acquiesced in and approved of Petitioner's continued presence in this country.  They may not now so lightly reverse course. *Accord Garcia Lanza v. Noem*, No. 26-0029 (GRB), 2026 WL 585130, at *6 (E.D.N.Y. Mar. 3, 2026) ("While ICE did not parole Garcia Lanza, another branch of Government did: the United States Congress.'"); *Estuardo Xol-Maas v. Francis, et al.*, No. 26-CV-00025 (JAV), 2026 WL 457005, at *2 (S.D.N.Y. Feb. 18, 2026) ("Congress clearly contemplated that SIJ designees would remain in the United States while awaiting adjudication of their adjustment of status applications." ).  Indeed, under the statute

allowing for adjustment of status, a special immigrant juvenile "shall be deemed . . . to have been paroled into the United States." 8 U.S.C. § 1255(g). USCIS's own Policy Manual states that "the beneficiary of an approved SIJ petition is treated for purposes of the adjustment application as if the beneficiary has been paroled, regardless of the beneficiary's manner of arrival in the United States." Chapter 7 – Special Immigrant Juveniles, U.S. Citizenship and Immigration Services Policy Manual, *available at* https://www.uscis.gov/policy-manual/volume-7-part-f-chapter-7.

For largely the same reasons the Court finds Respondents have failed to comply with the INA, it also concludes they have violated Petitioner's Due Process Rights. To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, (1976). Pursuant to *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Here, Petitioner has a significant interest at stake. Being free from physical detention by one's own government "is the most elemental of liberty interests," *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004), and Petitioner also has a strong interest in remaining in the country that has been his home and has granted him the ability to stay and work here for more than three years. Second, there is a large risk of erroneous deprivation of Petitioner's liberty interest through the procedures used in this case because

Respondents would have Petitioner immediately deported with no administrative or judicial review, despite the clear problems in their reading of the law as set forth above. Lastly, there is not a significant governmental interest at stake in Petitioner's wrongful detention pursuant to an incorrect interpretation of the law and an inaccurate portrayal of the facts.

It is clear then that Petitioner's violation of the Visa Waiver Program cannot be a basis for removing him in light of Respondents' subsequent approval of his I-360 and grant of deferred action which remains to this day in effect. Should Respondents believe there is a separate basis to remove Petitioner from the United States, they must charge him with a proper ground of removability, arrest him on a warrant if they so choose, and afford him a bond hearing and an ability to contest his removal. *See Sanchez Alfaro v. Mullin*, No. 26-0766 (GRB), 2026 WL 734348, at *5 (E.D.N.Y. Mar. 16, 2026) ("As the recipient of an unexpired period of deferred action and a valid work authorization from USCIS – by which the agency committed to take no steps to effect his removal and permitted him to work in the U.S. – Petitioner could not lawfully be arrested and detained by ICE, particularly in absence of changed circumstances and without notice or opportunity to be heard."); *Andres-Francisco v. Assistant Director, Department of Homeland Security, et al.*, No. 2:26-CV-392-JES-DNF, 2026 WL 672947, at *2 (M.D. Fla. Mar. 10, 2026) ("The government could have prosecuted this case and designated Andres-Francisco for expedited removal when he entered the country in 2022. Instead, they released him, granted him deferred status, and allowed him to stay for more than four years before re-arresting him. Thus, the Court rejects the government's argument that Andres-Francisco is subject to expedited removal and concludes that Respondents'

authority to detain him stems from section 1226(a). As a noncitizen detained under section 1226(a), Andres-Francisco has a right to a merit-based bond hearing."). At the present time, there is no basis for Petitioner's detention, and he must be immediately released.

IT IS ORDERED:

1) Petitioner's Writ for Petition of Habeas Corpus, Filing No. 1, is granted.

2) Respondents are ordered to immediately return Petitioner to the location (city and state) where he was detained and promptly release him from there or immediately release Petitioner from his present location and provide him with the means to return to the location of his arrest.

3) Respondents shall return all belongings taken from Petitioner and may not impose any conditions on his release.

4) Respondents are ordered to provide a status update to the Court certifying compliance with this Order no later than **March 24, 2026**.

5) The Court will enter a separate judgment.

Dated this 18th day of March, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

10